# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ALICIA F. SCATASTI,               )
                                  )
    Appellant-Defendant Below,    )
                                  )
    v.                            )      Case ID: 1503016466
                                  )
STATE OF DELAWARE,                )
                                  )
    Appellee-Plaintiff Below.     )


Date Submitted: January 12, 2016
Date Decided: March 28, 2016


## OPINION.
*Upon Appeal from the Court of Common Pleas.*
**AFFIRMED.**


John S. Malik, Esquire, Wilmington, Delaware. Attorney for Appellant, Alicia Scatasti.

Amanda J. DiLIberto, Esquire, Wilmington, Delaware. Attorney for Appellee, the State of Delaware.


**BUTLER, J.**

# FACTS

On March 25, 2015, Alicia Scatasti ("Appellant") collided with the rear end of a car driven by Ms. Colleen Arnold at the Marsh Road entrance ramp to Interstate 95 South. Appellant was subsequently arrested and charged with Driving Under the Influence of Alcohol ("DUI"), Following Too Closely, and Driving Without Proof of Insurance. Appellant entered pleas of not guilty to all three charges and the case proceeded to a bench trial in the Court of Common Pleas.[1] The following facts are gathered from the trial testimony and record.

After the accident, Ms. Arnold called the police and both drivers pulled their cars to the side of the road to wait for the police to arrive. Ms. Arnold testified that Appellant was "really upset, a little bit rambling" when they spoke on the side of the road.[2]

Trooper McBean of the Delaware State Police arrived on the scene. He observed a Chevrolet Cruz and a Ford Escort on the side of the road and noticed damage to both vehicles. Trooper McBean first made contact with Appellant, the driver of the Ford Escort. When Trooper McBean asked Appellant for her license, registration, and insurance, Appellant began to cry because she could not find her insurance card. Trooper McBean advised Appellant to remain in her car while he

---

[1] The State entered a *nolle prosequi* on the Driving Without Proof of Insurance charge prior to trial.

[2] Trial Tr. at 9.

1

gathered Ms. Arnold's information. About a minute later, Appellant exited her vehicle notwithstanding Trooper McBean's instruction, and in doing so, stumbled around the front of the car. Trooper McBean testified that she appeared dazed and he grabbed onto Appellant to prevent her from falling.

While speaking with Appellant face-to-face, Trooper McBean observed that Appellant's eyes were red and glassy and he detected "a strong odor of alcoholic beverage."[3] Trooper McBean also noticed that Appellant's speech was slurred. As a result, Trooper McBean conducted National Highway Traffic Safety Administration ("NHTSA") standardized field sobriety tests.

First, Trooper McBean administered the Horizontal Gaze Nystagmus ("HGN") test to Appellant, during which Appellant exhibited six "clues" of impairment.[4] Trooper McBean testified that there was a 70% probability that Appellant's blood alcohol content ("BAC") was .10% or higher based on her performance on the HGN test.

Next, Trooper McBean administered the Walk-and-Turn test, during which Appellant exhibited four out of eight clues of impairment. Specifically, Appellant raised her arms from her body more than six inches, stepped off the line, did not

_____

[3] *Id.* at 21.

[4] Trooper McBean testified that police officers look for a total of six "clues" of impairment when administering the HGN test, but only four "clues" must be present to indicate a likelihood of impairment. *Id.* at 26.

2

touch heal-to-toe, and at one point stopped walking. Trooper McBean testified that there was a 68% probability that Appellant's BAC was .10% or higher based on her performance on the Walk-and-Turn test.

Finally, Trooper McBean performed the One-Leg Stand test, during which Trooper McBean looked for four clues: (1) counting out loud; (2) swaying of the arms; (3) putting the foot down; and (4) ceasing to count out loud. Trooper McBean testified that Appellant exhibited all four clues, which correlated to a 68% probability that her BAC was .10% or higher.

Based on Appellant's performance on the standardized field sobriety tests and her admitting to having consumed one drink at dinner, Trooper McBean took Appellant into custody to administer an Intoxilyzer test. The trial judge ultimately suppressed the results of the Intoxilyzer test as being unreliable because Trooper McBean did not follow proper procedure in administering the test.

Appellant also testified at trial. She admitted telling Trooper McBean that she had a "double shot of tequila, seltzer, three limes, like I always order."[5] Appellant further testified that she had one mixed drink after eating dinner and then waited about 30 minutes before driving home. She also stated that she was upset and confused as a result of her airbags deploying when the cars collided.

---

[5] *Id.* at 88.

3

At the conclusion of evidence, the trial judge found Appellant guilty of DUI and Following Too Closely. After "gathering and considering all that[ was] put into the record in the case from the initial accident to everything later on and then the evidence that came as to things that happened before the accident," the trial judge found that the State carried its burden beyond a reasonable doubt.[6]

On Appeal, Appellant argues that the circumstantial evidence produced by the State was insufficient to prove beyond a reasonable doubt that Appellant was driving under the influence of alcohol at the time of the accident. Appellant does not challenge her conviction for Following Too Closely and the Court has not considered it here.

## STANDARD OF REVIEW

This Court reviews appeals from the Court of Common Pleas in the same manner as the Supreme Court would consider an appeal.[7] The Court's function is limited to correcting legal error and determining whether the factual findings made by the trial judge are "sufficiently supported by the record and are the product of an orderly and logical deductive process."[8] Errors of law are reviewed *de novo*.[9]

---

[6] *Id.* at 141.

[7] *Layne v. State*, 2006 WL 3026236, at *1 (Del. Super. Sept. 26, 2006).

[8] *State v. Anderson*, 2010 WL 4513029, at *4 (Del. Super. Nov. 1, 2010).

[9] *State v. Godwin*, 2007 WL 2122142, at *2 (Del. Super. July 24, 2007).

Findings of fact are reviewed only to verify that they are supported by substantial evidence.[10]

When the issue on appeal is the sufficiency of evidence to convict, the Court must discern "whether, considering the evidence in the light most favorable to the State, including all reasonable inferences to be drawn therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[11] The Court does not distinguish between direct and circumstantial evidence.[12] Factual findings will be overturned only where the record below indicates the trial court's findings are "clearly wrong."[13]

## DISCUSSION

In order for a defendant to be found guilty of DUI, the State must prove, beyond a reasonable doubt, that the defendant was (1) driving a vehicle (2) while impaired by alcohol.[14] It is not necessary to prove that the defendant was "drunk."[15] Rather, the State is only required to produce enough evidence to allow

---

[10] *Id.*

[11] *Church v. State*, 2010 WL 5342963, at *1 (Del. Dec. 22, 2010) (citing *Dixon v. State*, 567 A.2d 854, 857 (Del. 1989)).

[12] *Id.*

[13] *Anderson v. State*, 21 A.3d 52, 57 (Del. 2001).

[14] *See* 11 *Del. C.* § 4177(a); *Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993).

[15] *Lewis*, 626 A.2d at 1355.

5

a reasonable trier of fact to conclude that the defendant's ability to drive safely was impaired by alcohol.[16] The Delaware Supreme Court has held that determining whether a person is intoxicated is "within the realm of common knowledge."[17] Accordingly, investigative tests, such as chemical or sobriety tests, are not necessary to establish the impairment required by statute.[18] "The State may meet its burden by producing circumstantial evidence of alcohol's influence through the defendant's conduct, demeanor, and statements."[19]

Here, there was sufficient evidence from which a rational trier of fact could find Appellant guilty of DUI beyond a reasonable doubt. Appellant was involved in a motor vehicle accident and was described as "rambling" and "dazed" shortly after. She began crying when asked for her vehicle registration and insurance information, and stumbled when she exited her car (after being instructed to remain inside). Trooper McBean noticed that Appellant's speech was slurred, her eyes were glassy, and red, and he smelled an odor of alcohol on Appellant's breath. Moreover, the trial record contained testimony about Appellant's performance on three different field sobriety tests, the results of which suggested that Appellant

---

[16] *Id.*

[17] *Church* 2010 WL 5342963, at *2.

[18] *Id.*

[19] *Stevens v. State*, 110 A.3d 1264, 1271 (Del. Super. 2015).

6

was under the influence of alcohol. Finally, Appellant acknowledged consuming a double shot of tequila and one mixed drink before driving.

As the Court sees it, the question here is not whether a new fact finder might find otherwise or whether the Court believes the defendant was driving under the influence of alcohol. Rather, we are constrained to consider only whether there was sufficient evidence from which a rational fact finder might draw that conclusion. The absence of an objective, scientific test certainly gave Appellant some leeway to argue otherwise in this case, but we cannot conclude the fact finder was irrational simply because the State did not have its usual objective, and frequently outcome determinative, evidence in this case. The parties both put on their evidence, it was a fair case for both sides, the fact finder found Appellant guilty, and we see nothing in this record to warrant second guessing that conclusion upon appellate review.[20]

Accordingly, Appellant's DUI conviction is affirmed.

**IT IS SO ORDERED**.

Judge Charles E. Butler

---

[20] *See, e.g., Stevens v. State*, 129 A.3d 206, 210-11 (Del. 2015) (holding that odor of alcohol on defendant's breath, slurred speech, glassy eyes, and stumbling are "actions and characteristics [that] have long been associated with someone who is under the influence.").